# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,

                Plaintiff,

v.                                     CIVIL ACTION NO. 2:15-cv-05359

THEODORE A. CARTER, et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Theodore and Rebecca Carter's (the "Carters") Motion to Dismiss or Stay (ECF No. 4). For the foregoing reasons, the Court **GRANTS** the Carters' Motion to Dismiss or Stay and **DISMISSES** Nationwide's Complaint for Declaratory Relief (ECF No. 1).

## I. BACKGROUND

On April 28, 2015, Plaintiff Nationwide Mutual Fire Insurance Company ("Nationwide") initiated this action by filing a complaint for declaratory relief before this Court. (ECF No. 1.) In that complaint, Nationwide seeks a declaration that, based on certain exclusions contained in a homeowner's insurance policy issued by Nationwide to Theodore and Rebecca Carter (the "Carters"), it is not required to provide coverage pursuant to that policy for losses resulting from the destruction of the Carters' home. Although the underlying facts are disputed both in this case and in other litigation currently pending in state court, this declaratory judgment action has its

genesis in the collapse of an Engineered Material Arresting System at Yeager Airport in Charleston, West Virginia in March 2015. The Carters owned a home located in close proximity to the airport that was, through a series of contested events, eventually destroyed in the days following the collapse. Apparently anticipating a dispute over the extent to which it would have to cover the Carters' losses, Nationwide filed the instant action specifically asking this Court to declare that Nationwide is not required to provide any coverage based on two exclusions contained in the operative policy: (1) a provision excluding coverage where the loss at issue is caused by "government acts," and (2) a similar exclusion applicable to losses caused by "earth movement." (ECF No. 1-1 (Nationwide Insurance Policy) at 21–22.) As to each exclusion, the policy provides that a loss will not be covered so long as the listed exclusionary event "is the pre-eminent or efficient proximate cause even if another peril or event contributed concurrently or in any sequence to cause the loss." [1] (*Id*. at 21.)

---

[1] The policy exclusions provide, in relevant part:
  1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded if it is the pre-eminent or efficient proximate cause even if another peril or event contributed concurrently or in any sequence to cause the loss.

      a) earth movement and volcanic eruption. Earth movement means: earth movement due to natural or unnatural causes, including mine subsidence; earthquake; landslide; mudslide; earth shifting, rising or sinking. Volcanic eruption means: eruption; or discharge from a volcano.

      Resulting direct loss by fire, explosion, theft or breakage of glass which is part of the building is covered.
  
      ***
  
      l) government acts, meaning any loss caused by seizure, destruction, or confiscation by order of any government or public entity.

      Loss caused by acts ordered by any government or public entity at the time of a fire to prevent its spread is covered if the loss caused by fire would be covered under this policy.

(ECF No 1-1 at 21-22).

Shortly thereafter, on June 1, 2015, the Carters began pursuing their own claims for compensation based on the collapse, the events leading up to and following that collapse, and the loss of their home. First, before this Court, they responded to Plaintiff's Complaint and asserted several counterclaims[2] based on Nationwide's refusal to cover the losses associated with the destruction of their home, its methods in doing so, and its filing of the current action without prior consultation with the Carters. (ECF No. 5.) Second, they initiated a separate action in the Circuit Court of Kanawha County, West Virginia. (ECF No. 4-1 (State Court Complaint)). That action, in addition to asserting various tort claims against the parties alleged to be responsible for the collapse and subsequent destruction of the Carters' home, sets forth affirmative claims against Nationwide that exactly mirror the counterclaims asserted in this federal action. Further, it seeks a declaration—with respect to the same insurance policy under which Nationwide seeks a declaration before this Court relieving any coverage obligation—that Nationwide is legally obligated to provide the Carters with insurance benefits based on their losses. (*Id*. at 22.)

In light of the filing of that state court complaint, on June 1, 2015, the Carters filed their Motion asking this Court to either dismiss or stay the present federal declaratory judgment action in deference to the parallel state proceeding involving both the insurance dispute at issue here as well as larger issues regarding the Carters' ultimate entitlement to compensation. (ECF No. 4.) That motion is premised on the abstention doctrine, unique to declaratory judgment actions,

---

[2] Specifically, the Carters allege the following state law claims: (1) breach of contract, based on Nationwide's refusal to pay coverage claims submitted by the Carters; (2) "common law bad faith" and breach of fiduciary duty, based on Nationwide's refusal to pay insurance benefits, failure to fully investigate whether those benefits were actually owed, and filing of the instant declaratory judgment action without first consulting with the Carters; (3) unfair trade practices, based on a variety of alleged violations of the West Virginia Code regulating insurance trade practices; and (4) punitive damages. (ECF No. 5.) Of course, punitive damages do not constitute a cause of action in West Virginia. *Roney v. Gencorp*, 431 F. Supp. 2d 622, 638 (S.D. W. Va. 2006); *Miller v. Carelink Health Plans, Inc.*, 82 F.Supp.2d 574, 579 n. 6 (S.D. W. Va. 2000) (citing *Cook v. Heck's Inc.*, 342 S.E.2d 453, 461 (W. Va 1986)).

announced by the Supreme Court in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). Nationwide filed a Response (ECF No. 8) on June 15, 2015, and the Carters filed a Reply Memorandum on June 22, 2015. The Motion is now fully briefed and ripe for adjudication.[3]

## II. LEGAL STANDARD

The Federal Declaratory Judgment Act provides that, "In a case of actual controversy within its jurisdiction," the district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. A district court has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286.[4] However, the Fourth Circuit held that this discretion is not without limits and that:

---

[3] The Court previously declined to decide the abstention issue and stayed this action because the parallel state court action had been removed to federal court, and was pending a motion to remand. (ECF No. 54.) That action was remanded back to the Circuit Court of Kanawha County on July 25, 2016, making the abstention issue ripe for consideration in this case.

[4] Nationwide has not argued that the discretionary abstention standard of *Brillhart* and *Wilton* should not apply to this case. The Fourth Circuit has held that the standard of *Colorado River Conservation District v. United States*, 424 U.S. 800 (1976), not *Brillhart/Wilton*, is the appropriate standard for abstention over a complaint that asserts both declaratory and nondeclaratory claims. *VonRosenberg v. Lawrence*, 781 F.3d 731, 735 (4th Cir. 2015). In the instant action, Nationwide's complaint raises only a declaratory claim, but the Carters' counterclaims include legal claims. The Fifth Circuit has held that, in this scenario, abstention must be analyzed under *Colorado River*. *See New England Ins. Co. v. Barnett*, 561 F.3d 392, 395 (5th Cir. 2009). However, that court based its decision on Fifth Circuit precedent that held *Colorado River* applies "'[w]hen an *action* contains any claim for coercive relief.'" *Id.* (quoting *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 n. 4 (5th Cir. 2002)). The Fourth Circuit's precedent, in contrast, focuses on the plaintiff's claims in the complaint. *See VonRosenberg*, 781 F.3d at 735 ("*Colorado River,* not *Brillhart/Wilton*, must guide a court's decision to abstain from adjudicating mixed *complaints* alleging claims for both declaratory and nondeclaratory relief.") (emphasis added). The court also specifically reasoned in terms of the plaintiff's claims, noting that it would be unfair to apply the *Brillhart/Wilton* standard to mixed claims, as this could "deprive a plaintiff of access to a federal forum simply because he sought declaratory relief in addition to an injunction or money damages." *Id.* at 735. Where the party seeking dismissal based on abstention is the same party who raises the counterclaims, this concern is not at issue; indeed, to apply *Colorado River* abstention due to a defendant's counterclaims would result in a greater likelihood of retention of federal jurisdiction where the defendant opposes it. Here the Carters filed their motion to dismiss on the same day as their answer containing counterclaims, which suggests that they treated abstention as a threshold issue, while proactively raising counterclaims in the event the motion was denied. Considering the relevant Fourth Circuit precedent, the particular factual and procedural scenario, and that the parties treated *Brillhart/Wilton* as the controlling standard, the Court finds it appropriate to apply that discretionary standard to the abstention question in this case.

> [A] district court may not refuse to entertain a declaratory judgment action out of "whim or personal disinclination," *[Public Affairs Assoc., Inc. v.] Rickover*, 369 U.S. at 112, but may do so only for "good cause." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937).

*Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994). The Court further held that a federal district court should entertain a declaratory judgment action within its jurisdiction if it finds that the declaratory relief sought will: (1) serve the useful purpose of clarifying and settling the legal relations in issue; and (2) terminate and afford relief from the controversy giving rise to the proceeding. *Id.* at 375; *Quarles*, 92 F.2d at 325. "[A] declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998).

However, a declaratory judgment should not be used to "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256-57 (4th Cir. 1996) (quoting *Quarles*, 92 F.2d at 325). "When a related state proceeding is underway, a court considering a declaratory judgment action should specifically consider whether the controversy 'can better be settled in the proceeding pending in state court.'" *Id.* at 257 (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). The Fourth Circuit has recognized that a federal court should "'[o]rdinarily' decline for reasons of efficiency and comity, to grant declaratory relief 'where another suit is pending in a state court presenting the *same issues*, not governed by federal law, between the *same parties*.'" *Nautilus*, 15 F.3d at 377 (citing *Brillhart*, 316 U.S. at 495).

The Fourth Circuit announced four factors for district courts to consider in deciding whether or not to entertain a declaratory action in the face of a corresponding state proceeding:

5

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
(2) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending;
(3) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and
(4) whether the declaratory judgment action is being used merely as a device for procedural fencing-that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

*Nautilus*, 15 F.3d at 377 (citations and internal quotation marks omitted).

### III. DISCUSSION

A review of the four *Nautilus* factors counsels in favor of dismissing Nationwide's declaratory judgment action.

A. State's Interest

The first factor, the strength of the state's interest in having the issues decided in state court, weighs in favor of abstention "when the questions of state law involved are difficult, complex, or unsettled," not when they involve "the routine application of settled principles of law to particular disputed facts." *Nautilus*, 15 F.3d at 377–378. Where West Virginia has already considered analogous issues, the state's interest in having the issue decided in state court is diminished. *Continental Casualty Co. v. Fuscardo*, 35 F.3d 963, 967 (4th Cir. 1994). This Court has also recognized that the state's interest is stronger regarding issues in insurance law. *See First Fin. Ins. Co. v. Crossroads Lounge, Inc.*, 140 F. Supp. 2d 686, 694 (S.D. W. Va. 2001).

Under West Virginia law, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.*, 345 S.E.2d 33 (W. Va. 1986). "Where the provisions of an insurance policy contract are clear and unambiguous, they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning

6

intended." Syl. Pt. 2, *W. Va. Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483 (W. Va. 2004) (internal quotation marks and citation omitted). "Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl. Pt. 1, *Prete v. Merchants Property Ins. Co.*, 223 S.E.2d 441 (W. Va. 1976). The question of whether language in a contract is ambiguous is a legal question decided by the court. *See* Syl. Pt. 4, *Stanley*, 602 S.E.2d 483. Terms determined to be ambiguous must be "strictly construed against the insurance company and in favor of the insured." Syl. Pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (W. Va. 1987). Additionally, "[w]here the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syl. Pt. 5, *Nat'l Mut. Ins. Co. v. McMahon & Sons*, 356 S.E.2d 488 (W. Va. 1987), *overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co.*, 504 S.E.2d 135 (W. Va. 1998).

Nationwide argues that this declaratory action involves simple application of settled insurance law to disputed facts. The Carters' arguments on this issue largely focus on the possible entanglement and inefficiency that could be caused by this Court deciding these issues, concerns more appropriate for the second and third *Nautilus* factors. The Carters also make much of the complexity of the "earth movement" exclusion, arguing that the Supreme Court of Appeals of West Virginia's ("WVSCA") decision in *Murray v. State Farm Fire and Casualty Co.*, 509 S.E.2d 1 (W. Va. 1998) sets up a complex analysis for that exclusion. That court in that case found earth movement exclusions in two insurance policies to be ambiguous and ultimately held:

> [w]hen an earth movement exclusion in an insurance policy contains terms not otherwise defined in the policy, and the terms of the exclusion relate to natural

7

>events (such as earthquakes or volcanic eruptions), which events, in some instances, may also be attributed to a combination of natural and man-made causes (such as landslides, subsidence or erosion), the terms of the exclusion must be read together and limited to exclude naturally-occurring events rather than man-made events.

Syl. Pt. 7, *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 3 (W. Va. 1998). However, the exclusion language in that case is distinguishable from the language at issue here, in that the exclusions in that case did not specify whether the earth movements had to be the result of natural causes, while the exclusion in this case specifically excludes "earth movement due to natural or unnatural causes." *Id.* at 8. Given that the ambiguity the WVSCA found in those exclusions stemmed from the fact that they could be read to encompass earth movements caused by natural and unnatural causes, or by natural causes only, this difference seems to remove the ambiguity from the instant policy. *Id.* at 8-9. Accordingly, interpretation of the "earth movement" exclusion is not a complex or novel issue of state law such that West Virginia has a strong interest in having it decided in its own courts.

However, the government acts exclusion in the instant case presents a different scenario. The Carters contend that the WVSCA has never addressed this exclusion before, and the Court has not found a published case addressing it. Additionally, there is limited guidance from other courts on interpreting this type of exclusion. *See* 84 A.L.R.2d 683 (collecting a limited number of cases applying this type of exclusion). This Court has recognized that "the [WVSCA] and the courts of her sister states have provided sufficient guidance in the broader areas of contract interpretation and of the applicability of insurance policy exclusions generally" such that exclusions without a published case from the WVSCA do not necessarily present complex legal issues. *Crossroads Lounge, Inc.*, 140 F. Supp. 2d at 696 (finding that interpretation of an assault and battery exclusion in an insurance policy was not a complex issue that the state courts would have a significant interest

8

in). However, another district court applying West Virginia law found that, where the WVSCA had not previously considered the issue, the state had a "strong interest" in having a "business exclusion" interpreted in the context of an automobile liability policy in state court. *Allstate Prop. & Cas. Ins. Co. v. Cogar*, 945 F. Supp. 2d 681, 689 (N.D. W. Va. 2013); *see also Motorists Mut. Ins. Co. v. Frazier*, 623 F. Supp. 2d 727, 732 (S.D. W. Va. 2009) (calling an issue of statutory interpretation "novel" where there were no published opinions deciding it).

In addition to any interest West Virginia has in having this issue decided in state court due to the lack of guidance on the issue, the state also has an interest in how broadly the exclusion is construed, as it bears on the discretion of state actors. A recent decision from a district court in Pennsylvania examining this issue noted that "in order for such a Government Acts Exclusion to apply, the government order must have been lawful, and authorities must have acted within the bounds of the governmental order." *Kao v. Markel Ins. Co.*, 708 F. Supp. 2d 472, 477 (E.D. Pa. 2010). However, courts interpreting these exclusions have offered varying interpretations of how to construe what constitutes a lawful order or action. *See* 10 COUCH ON INSURANCE § 152:22. Some courts have interpreted the provision broadly, finding that losses caused by a government order are excludable where the government was acting within its discretionary power when it caused the loss, even if the specific act or order was outside of its authority. See *California Cafe Rest. v. Nationwide Mut. Ins. Co.*, No. C 92-1326 BAC, 1994 WL 519449, at *1-2, 8 (N.D. Cal. Sept. 14, 1994) ("[I]f the government has 'de facto authority,' whether or not it has lawful (de jure) authority, the exclusion applies."). However, other courts have evaluated the particular order more closely, finding that the exclusion does not apply where the order was without legal authority. *See Am. Cent. Ins. Co. v. Stearns Lumber Co.*, 140 S.W. 148, 150 (Ky. 1911) (finding that an

exclusion for losses due to an "order of any civil authority" did not preclude coverage for a building that burned down because a marshal set it on fire to force suspects they were engaged in a gunfight with to exit, because the order was outside of the marshal's legal authority); *In re W. Elecs., Inc.*, 128 B.R. 905, 912 (Bankr. D.N.J. 1991) ("[T]he governmental acts exclusion hinges upon the propriety of the seizure."). West Virginia has an interest in having its own courts make the decision on how broadly to read this exclusion because it involves a determination related to the behavior and discretion of state and local government agencies and actors.

Given that it is possible that the deciding court would find the "earth movement" exclusion applicable, it is may be unnecessary for that court to reach the "government acts" exclusion. However, since it is possible that the deciding court would have to reach this exclusion, and West Virginia has an interest in its own courts deciding this issue since it is an open question that includes considerations of the legality of actions of state personnel, the first *Nautilus* factor weighs somewhat in favor of dismissal.

B.  Efficiency

The second *Nautilus* factor the Court must consider is efficiency. Generally, efficiency and judicial economy are best served by having "all litigation stemming from a single controversy resolved in a single court system." *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992). Both the Carters and Nationwide are parties to the parallel state action, and the Carters included a claim for declaratory relief deciding the coverage issue in their state court complaint. (ECF No. 4-1 at 15-23.) This Court has observed that where the coverage issues in state and federal suits are substantively identitcal, this "tilts in the favor of dismissing the action." *Frazier*, 623 F. Supp. 2d at 733. The state action also involves the related tort claims not present in this action, which

suggests that it, unlike this action, could resolve all of the rights of all interested parties with respect to the controversy giving rise to both actions. The Fourth Circuit has recognized that "[w]hile inefficiencies can of course occur within a single court system, the prospects for coordinated management and alleviation of abrasion are greater when the litigation is handled under one jurisdictional roof." *Mitcheson*, 955 F.2d at 239. Accordingly, this factor weighs somewhat in favor of dismissal so that all issues may be resolved in a single court system.

C. Entanglement

In applying the third *Nautilus* factor, a court should determine whether the state and federal actions present "overlapping issues of fact or law." *Nautilus*, 15 F.3d at 377 (quoting *Mitcheson*, 955 F.2d at 239.

Nationwide argues that the issues presented in this action do not significantly overlap with the issues in the state court action; it argues that the issues in this case are legal matters of "contract interpretation" while the state action concerns potential tort liability for the destruction of the Carters' home. (ECF No. 8 at 8-9.) Though the Carters arguments directed specifically at this factor relate more to efficiency, they note elsewhere in their briefing that the exclusion questions Nationwide raises require a determination of the "efficient proximate cause" of the destruction of their home.[5] (ECF No. 4 at 5-9.) They argue that the need to resolve this issue in order to

---

[5] The WVSCA explained the concept of efficient proximate cause in *Murray v. State Farm Fire and Casualty Co.*, holding:
> When examining whether coverage exists for a loss under a first-party insurance policy when the loss is caused by a combination of covered and specifically excluded risks, the loss is covered by the policy if the covered risk was the efficient proximate cause of the loss. No coverage exists for a loss if the covered risk was only a remote cause of the loss, or conversely, if the excluded risk was the efficient proximate cause of the loss. The efficient proximate cause is the risk that sets others in motion. It is not necessarily the last act in a chain of events, nor is it the triggering cause. The efficient proximate cause doctrine looks to the quality of the links in the chain of causation. The efficient proximate cause is the predominating cause of the loss.

Syl. Pt. 8, 509 S.E.2d 1. The WVSCA also explained in that case that the determination of which among concurrent

determine the applicability of the exclusions necessitates the resolution of some of the same factual issues before the state court.[6]

As noted above, the Carters have raised the issue of coverage in their state court action, so a decision by this Court in favor of Nationwide on either exclusion would have preclusive effect on that issue in state court. *Compare Kapiloff*, 155 F.3d at 494 ("[S]ince both actions raised the same core issues of law and fact, and both actions aimed at determining the rights of the parties under the insurance policy, potential entanglement between the state and federal courts was a genuine possibility.") *with Crossroads Lounge, Inc.*, 140 F. Supp. 2d at 699 ("Furthermore, the absence of a pending state case on the coverage and defense issues now becomes relevant, for absent such a case, the likelihood of entanglement is even less."). Additionally, the Carters are correct that deciding the applicability of the exclusions would require the Court to make a factual determination as to the "efficient proximate cause" of the destruction of their home, which could lead to entanglements with the state court proceedings. *See Evanston Ins. Co. v. Dan Ryan Builders, Inc.*, No. CIV. ELH-11-02366, 2012 WL 502965, at *5 (D. Md. Feb. 13, 2012) (finding that the third factor weighed in favor of dismissal where the federal court "would necessarily have to decide some of the same factual disputes that undergird the West Virginia case"). The Carters

---

risks was the efficient proximate cause is generally a question of fact. *See id.* at 12 (citing *State Farm Fire & Cas. Co. v. Von Der Lieth*, 820 P.2d 285, 290-91 (Cal. 1991).

[6] It is important to note that this action is distinguishable from the common scenario in which a state court defendant requests that its insurer defend and indemnify it in state court, and that insurer files a federal declaratory action seeking a declaration that it has no duty to defend or indemnify. In that type of case, the federal court need only look at the allegations in the state court complaint to determine if the duties are triggered. *See Horace Mann Ins. Co. v. Leeber*, 376 S.E.2d 581, 584 (W. Va. 1988) (explaining that under West Virginia law, the duty to defend the insured is "generally broader than the obligation to provide coverage"); *Aetna Cas. & Sur. Co. v. Pitrolo,* 342 S.E.2d 156, 160 (W. Va. 1986) (In determining whether the company has the duty to defend the insured, courts applying West Virginia law consider "whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy."). *Westfield Insurance Co. v. Carpenter Reclamation, Inc.*, No. 5:13-CV-12818, 2013 WL 5409836 (S.D. W. Va. Sept. 25, 2013), one of the cases Nationwide cites in support of its argument against abstention, is an example of this separate variety of cases.

argue that the efficient proximate cause of their losses was the negligence of the Central Regional West Virginia Airport Authority and several engineering companies, who are parties to the state court action. As a result, this Court would have to make some of the same factual determinations on this issue that are before the state court, potentially resulting in issue preclusion or the Carters being subject to inconsistent determinations.

Accordingly, due to the direct overlap of the legal issue of coverage and the potential for overlap with regard to the factual issues surrounding the "efficient proximate cause" of the destruction of the Carters' home, this factor weighs strongly in favor of dismissal.

### D. Procedural Fencing

The last *Nautilus* factor that courts consider is "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'" *Nautilus*, 15 F.3d at 377 (internal citation omitted). Nationwide makes much of the fact that it filed this action "over a month" prior to the filing of the Carters' state court complaint, claiming that this was not a "'race to the courthouse' separated by only a few days." (ECF No. 8 at 10.) However, the Fourth Circuit has declined to find sequence of filing dispositive even where the filings were separated by a period of time similar to the filings in this controversy. *See Poston*, 88 F.3d at 258 (characterizing filings separated by six weeks as a "race to the courthouse door"). The Carters claim, in contrast, that Nationwide filed this suit immediately after assuring them that it would not take action related to this controversy without conferring further with them. (ECF No. 4 at 14.) However, they have offered no evidence to support this assertion, so, while this would suggest forum shopping if true, the Court declines to give it weight.

The timeline of filing of these two actions, coupled with the subject matter, suggests that Nationwide filed this suit in anticipation of a coercive suit, anticipating the defenses it would have raised in such a suit. This type of anticipatory lawsuit is generally disfavored, and has been understood to be a form of forum shopping. See *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983) ("Anticipatory suits are disfavored because they are an aspect of forum-shopping."); *State Farm Fire & Cas. Co. v. Taylor*, 118 F.R.D. 426, 430 (M.D.N.C. 1988) (citing *Hanes Corp. v. Millard*, 531 F.2d 585, 592–93 (D.C. Cir. 1976)) (noting that anticipation of defenses is not usually a proper use of declaratory judgments). However, without direct evidence of forum shopping, the Court declines to give this strong weight. Accordingly, the issue of procedural fencing is neutral and does not support or counsel against dismissal.

## IV. CONCLUSION

Two of the four *Nautilus* factors at least tip toward dismissal, while a third strongly supports dismissal, and the fourth is neutral. Accordingly, the Court finds that it is an appropriate exercise of its discretion to abstain from deciding this declaratory judgment action. The Carters' Motion to Dismiss or Stay (ECF No. 4) is **GRANTED** and Nationwide's Complaint for Declaratory Relief (ECF No. 1) is **DISMISSED**. The Court **ORDERS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 9, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE